**Katharine Edwards, OSB No. 173393**
attorney@kedwards-law.com
**LAW OFFICE OF KATHARINE EDWARDS**
P.O. Box 417
Hillsboro, Oregon 97123
Telephone: (503) 908-3589

Attorney for the plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSHUA HANEY**,<br><br>       **PLAINTIFF**,<br><br>              v.<br><br>**OREGON DEPARTMENT OF CORRECTIONS**, and **STATE OF OREGON; WARREN ROBERTS; JOE BUGHER; BRENT ERIKSEN; MARICA VENTURA; KAREN HARRIS; DR. DORRIS; CHRISTOPHER DIGIULIO;** and **JOHN** and **JANE DOES**,<br><br>       **DEFENDANTS.** | Case No.<br><br>**COMPLAINT**<br>(Title II of the ADA; Rehabilitation Act; 42 U.S.C. § 1983: 8th Amendment)<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1.      This action is an action for damages, injunctive, declaratory and equitable relief, including compensatory damages, punitive damages, and attorney fees and costs, to redress violations of Title II of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101 *et seq*., violations of federal statutory rights pursuant to 42 U.S.C. § 1983, and pursuant

PAGE 1 – COMPLAINT

to Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq.* (hereinafter, "the Rehabilitation Act"), and the Eighth Amendment to the U.S. Constitution.

2. Plaintiff Joshua Haney is a hearing-impaired disabled individual incarcerated in Oregon Department of Corrections (ODOC) who was first housed at Oregon State Penitentiary (OSP) and then transferred to Deer Ridge Correctional Institution (DRCI). Plaintiff has Ménière's Disease, a chronic inner ear disorder causing hearing impairment, tinnitus, pressure and pain, and severe vertigo with nausea and vomiting.

3. Plaintiff's hearing impairment has worsened since 2019 and ODOC had documentation of Plaintiff's condition and resulting disability but did not perform any assessments or provide reasonable accommodations to allow Plaintiff equal enjoyment of the programs and services available to Plaintiff's non-disabled counterparts. Defendants furthermore refused to provide Plaintiff with a formal hearing test for years and even after finally providing a hearing test in 2022, Defendants have still refused to provide Plaintiff with hearing aids as he requires. Plaintiff cannot hear or communicate properly without hearing aids. Plaintiff does not know sign language or lipreading.

4. Defendants inexplicably removed Plaintiff from all educational programming in June 2020, finally admitting in July 2021 that his disability was the reason for his removal from programming. Plaintiff has not had access to educational programming since his 2020 removal, and Defendant has not performed any assessment to even determine if reasonable accommodations to allow Plaintiff to access the same programming as non-disabled inmates is possible.

5. Plaintiff's disability also causes pain and pressure, tinnitus, vertigo, nausea and vomiting, for which Plaintiff has repeatedly requested adequate treatment but has been denied.

6. Plaintiff has also experienced untreated or improperly treated medical conditions since 2019, namely untreated severe back pain and a groin rash, both of which he has repeatedly reported to medical staff but his requests have been denied.

7. Defendants are individuals who, during the time of Plaintiff's incarceration, have had authority and responsibility for his treatment and care.

8. Plaintiff has fully exhausted his available administrative remedies.

9. Plaintiff seeks equitable relief, compensatory and punitive damages, declaratory and injunctive relief, as well as attorney fees and costs as set forth below.

## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1343, civil rights jurisdiction.

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. Section 1391(b) because the claim arose in this Judicial District.

## PARTIES

12. Plaintiff Joshua Haney is a citizen of the United States of America. At the time of filing of this action, Plaintiff has standing as he is in custody of the Oregon Department of Corrections (ODOC) at Deer Ridge Correctional Institution (DRCI). At all times relevant, Plaintiff was a resident of Madras, Jefferson County, Oregon and Salem, Marion County, Oregon. Plaintiff is a qualified individual with a disability in that Plaintiff has Ménière's Disease, a chronic inner ear disorder causing hearing impairment, tinnitus, pressure and pain, and severe vertigo with nausea and vomiting.

13. Defendant State of Oregon operates Oregon Department of Corrections (ODOC) which is an agency of the State of Oregon. ODOC owns and operates prisons in Oregon,

including Oregon State Penitentiary (OSP) and DRCI, and is responsible for the inmates in its facilities. ODOC is a public entity subject to Title II of the ADA. ODOC is a recipient of federal financial assistance and subject to Section 504 of the Rehabilitation Act.

14. Defendant Warren Roberts is and was at all relevant times a physician with ODOC and Medical Director for ODOC. Roberts is sued in his individual and official capacities.

15. Defendant Je Bugher is and was at all relevant times Director of Health Services for ODOC. Bugher is sued in his individual and official capacities.

16. Defendant Karen Harris is and was at all relevant times an ODOC physician at OSP. Harris is sued in her individual and official capacities.

17. Defendant Dr. Dorris is and was at all relevant times an ODOC physician at OSP. Dorris is sued in their individual and official capacities.

18. Defendant Christopher DiGiulio is and was at all relevant times an ODOC physician at DRCI. DiGiulio is sued in his individual and official capacities.

19. Brent Eriksen is and was at all relevant times the ADA Coordinator at OSP. Eriksen is sued in his individual and official capacities.

20. Marica Ventura is and was at all relevant times the statewide ODOC ADA Coordinator. Ventura is sued in her individual and official capacities.

21. Defendants John and Jane Does 1-20, were at all times relevant ODOC employees assigned to work at OSP or DRCI, who were personally involved in the violations alleged herein but whose identities are currently unknown to Plaintiff. Once Plaintiff learns the identities of the Doe Defendants through discovery, he will amend this Complaint to substitute the proper names and titles for the Doe pseudonyms. All Doe Defendants are sued in their individual and official capacities.

1.      The individually named Defendants were at relevant times employees of ODOC at all times relevant to this complaint. At all times relevant herein each Defendant acted under color of state law and within the course and scope of their employment. Each Defendant is sued individually, for purposes of damages, and in his or her official capacity for purposes of injunctive relief.

## FACTUAL ALLEGATIONS

2.      Plaintiff entered ODOC custody on or around February 12, 2019. Plaintiff's ODOC medical records indicate that his disability was recorded.

3.      Ménière's Disease is a chronic inner ear disorder causing hearing impairment characterized by deafness to specific tones, tinnitus, pressure and pain in the head and inner ear, and severe vertigo with nausea and vomiting.

4.      Plaintiff suffers from hearing impairment, tone deafness, pain, tinnitus, and severe vertigo causing him to lose balance and experience extreme nausea and vomiting. Plaintiff's vertigo and resulting nausea sometimes causes him to vomit repeatedly to the point of throwing up blood. Plaintiff has lost approximately 60 pounds, in part, from his nausea and vomiting. The dizziness and vertigo have also caused Plaintiff to fall on numerous occasions. Defendants have not adequately treated the symptoms of Plaintiff's disability despite Plaintiff's repeated requests for treatment.

5.      Upon Information and belief, Defendant Brent Eriksen is responsible for ensuring that disabled individuals housed at OSP have proper disability accommodations. He did not.

6.      Upon information and belief, Defendant Marica Ventura is responsible for ensuring that disabled individuals in ODOC custody have proper disability accommodations. She did not.

7. Since entering ODOC custody in 2019, Plaintiff made numerous requests for a hearing test, hearing aid, and other auxiliary aids, including but not limited to requests in May 2019, June 2019, November 2020, February 2021, March 2021, and June 2021. Plaintiff has never been provided a proper medical hearing aid. At no time since entering ODOC custody has ODOC assessed Plaintiff's disability and his need for auxiliary aids or accommodations. ODOC has never inquired what auxiliary aids or accommodations Plaintiff prefers.

8. In late 2021, Defendant Eriksen provided Plaintiff with an inexpensive over-the-counter hearing amplifier, which was not an appropriate or adequate auxiliary aid for Plaintiff's condition. Defendant Eriksen informed Plaintiff that if Plaintiff wanted an actual medically appropriate prescription hearing aid, then Plaintiff would be required to pay $5,000-$6,000 out-of-pocket in advance for the devices. Plaintiff did not have funds available to purchase hearing aids himself.

9. Since 2020, on multiple occasions, Plaintiff has requested accommodations from Defendant Eriksen, OSP security staff, and DRCI staff to allow him to communicate with his family during communications, specifically permission to sit in a private room or quiet area to allow communication without background noise distorting Plaintiff's limited hearing. Plaintiff's requests were denied by Defendant Eriksen and Defendants Does.

10. In a June 16, 2021 grievance response, Defendant Warren Roberts blamed ODOC's lack of any meaningful effort to address Plaintiff's hearing impairment or provide appropriate auxiliary aids on the COVID-19 pandemic; Plaintiff entered ODOC custody approximately 11 months before the first case of COVID-19 was reported in the United States.

11. In an October 20, 2021 grievance response, Defendant Joe Bugher parroted Defendant Roberts' previous COVID-19 excuse.

12. On or about June 17, 2021 and again on or about July 6, 2021, ODOC staff Doe responded to Plaintiff's request for auxiliary aids by advising him to simply read lips, a skill which he does not possess and has never indicated he possesses.

13. Plaintiff did not receive a "hearing-impaired" sticker for his prison identification card until he became aware of them on his own and requested one on or about July 5, 2021, despite multiple previous meetings with Defendant Eriksen and the prison ADA staff tasked with advising disabled individuals of such aids and providing accommodations within the prison environment.

14. Plaintiff frequently experiences extreme bouts of vertigo with vomiting and balance difficulties for which he does not receive adequate medical treatment.

15. In or around July 2020, Plaintiff was inexplicably removed from all programming and education courses and denied readmission.

16. On or around July 18, 2021, Plaintiff received a response from education provider L. Lacy responding affirmatively to Plaintiff's inquiry as to whether his disability was the reason for exclusion from all education and programming opportunities. Since removal from education class in July 2020 and learning in July 2021 that his disability was the reason, Plaintiff has neither had the opportunity to engage in those classes again nor has he been provided the testing, auxiliary aids, medical treatment, or any accommodations that would allow him to participate in the services and programming available to his non-disabled counterparts.

17. On or about June 21, 2022, Plaintiff was finally taken out to see an otolaryngologist who conducted an exam and hearing test. The physician recommended that Plaintiff receive a right hearing aid immediately and left hearing aid soon, in addition to recommending several medications to treat Plaintiff's condition. Upon return to the prison,

Defendant medical provider Doe informed Plaintiff that the prison would not be providing any of the medications recommended by the outside specialist. Plaintiff did not receive any of the follow-up treatment, medications, or auxiliary aids recommended by the specialist.

18. To date, Plaintiff still has not received appropriate auxiliary aids to accommodate Plaintiff's hearing impairment in either ear, nor has Plaintiff received adequate medical treatment for the conditions resulting from his disability.

19. Since 2019, Plaintiff has repeatedly complained of medical symptoms of his disability on at least 15 occasions to ODOC medical staff at OSP and DRCI, including specifically to Defendant Harris, Defendant Dorris, Defendant DiGuilio, and Defendants John and Jane Does which has gone untreated or improperly treated.

20. Since 2020, Plaintiff has repeatedly complained of back pain on at least 15 occasions to ODOC medical staff at OSP and DRCI, including specifically to Defendant Harris, Defendant Dorris, Defendant DiGuilio, and Defendants John and Jane Does which has gone untreated or improperly treated.

21. Since 2019, Plaintiff has repeatedly complained of a groin rash on at least 15 occasions to ODOC medical staff at OSP and DRCI, including specifically to Defendant Harris, Defendant Dorris, Defendant DiGuilio, and Defendants John and Jane Does which has gone untreated or improperly treated.

22. Upon information and belief, Defendant Roberts is tasked with directly supervising ODOC medical staff and overseeing medical care for those in ODOC custody, including making final decisions regarding the medical treatment and care for individuals in ODOC custody, and investigating allegations made in grievances. Defendant Roberts refused to provide adequate medical care despite Plaintiff's numerous written requests, Plaintiff's medical

records to which Defendant Roberts had full access, and Plaintiff's numerous grievances which Defendant Roberts purported to have investigated in his responses to Plaintiff denying medical care.

23.    Upon information and belief, Defendant Bugher is tasked with directly supervising ODOC medical staff and overseeing medical care for those in ODOC custody and investigating allegations made in grievances. Defendant Bugher refused to provide adequate medical care despite Plaintiff's numerous written requests, Plaintiff's medical records to which Defendant Bugher had full access, and Plaintiff's numerous grievances which Defendant Bugher purported to have investigated in his responses to Plaintiff denying medical care.

24.    Since 2019, Plaintiff has repeatedly requested accommodations to allow him to communicate with his friends and family outside ODOC, including access to quiet areas to conduct phone calls and visits, but those requests have been denied without Defendants ever inquiring as to whether those accommodations or other reasonable accommodations would be possible.

25.    As a result of Plaintiff's disability and Defendants' refusal to provide proper auxiliary aids and reasonable accommodations, Plaintiff has been unable to access Defendants' services and programs that are available to his non-disabled counterparts, and has suffered loss of programming and education opportunities, anxiety, loss of ability to communicate with friends and family, depression, sleeplessness, and isolation.

26.    As a result of Plaintiff's untreated or inadequately treated medical conditions, including back pain, groin rash, and the symptoms of Plaintiff's disability, including but not limited to hearing loss, vertigo, nausea and vomiting, tinnitus, and ear pain and pressure, Plaintiff

has suffered pain, humiliation, depression, anxiety, loss of quality of life, sleeplessness, weight loss, isolation, loss of mobility, and distress.

**COUNT I**
**(Americans With Disabilities Act - Title II: 42 U.S.C. §12131 *et seq*.)**
**(Against Defendants ODOC and State of Oregon)**

27. Plaintiff re-alleges all prior paragraphs as though fully restated herein.

28. At all times material, Defendants ODOC was a public entity for the purpose of, and subject to, the ADA. Defendant provides public services.

29. Plaintiff has physical impairments that substantially limit one or more of his major life activities. Plaintiff is both hearing impaired and experiences vertigo with nausea and vomiting as a result of Ménière's Disease. Plaintiff is a qualified individual with a disability under the ADA.

30. At all relevant times, Defendants were aware of Plaintiff's physical disability, namely that Plaintiff suffers from Ménière's Disease with hearing loss, vertigo and dizziness with accompanying nausea and vomiting, tinnitus, pain, and pressure.

31. Defendants discriminated against Plaintiff by excluding him from or denying him an equally effective opportunity to participate in the benefits of Defendants' services, programs, or activities.

32. Defendants denied Plaintiff the benefits of Defendants' services and programs by failing to comply with 28 CFR § 35.107 and 28 CFR § 35.106, which require public entities to designate and provide notice of a responsible employee to coordinate efforts to comply with and carry out responsibilities of Title II of the ADA.

33. Defendants denied and continue to deny Plaintiff the benefits of Defendants' services and programs by failing to provide adequate communication services, including proper auxiliary aids.

34. Defendants denied and continue to deny Plaintiff the benefits of Defendants' services and programs by failing to provide appropriate treatment or medication for his disability-related conditions, which exacerbated the manifestations of Plaintiff's physical disability including extreme dizziness, nausea, and vomiting, and resulted in additional health conditions including but not limited to weight loss, weakness, and anxiety.

35. Defendants denied and continue to deny Plaintiff the benefits of Defendants' services and programs by removing plaintiff from all educational programs as a result of his disability.

36. Defendants failed to conduct any assessment of Plaintiff's disability or the auxiliary aids or accommodations that would ensure effective communication and equal participation in and benefit from ODOC services.

37. Defendants' actions were intentional and conducted with a deliberate indifference to Plaintiff's rights.

38. Defendants knew that Plaintiff requested accommodations and proper auxiliary aids for communication and daily life multiple times since entering ODOC custody and disregarded Plaintiff's requests without making any effort to determine if it was possible to accommodate his requests.

39. Defendants knew that Plaintiff was removed from educational programming as a result of his disability and failed to make any effort to determine if accommodations were possible to allow plaintiff to participate in educational programming.

40. Defendants' actions constitute discrimination under Title II of the ADA.

41. As a result of Defendants' unlawful actions, Plaintiff suffered and continues to suffer pain, loss of access to programming and education, humiliation, anxiety, distress, isolation, pain, difficulty sleeping, weight loss, and impairment of his personal dignity and right to be free from discrimination or interference with his statutory rights.

42. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, loss of employment opportunities, costs for hearing amplifier, and other expenses. Plaintiff's economic damages are not expected to exceed $10,000. Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

43. Plaintiff is entitled to injunctive relief as against Defendants, including, but not limited to, an order prohibiting Defendants from continued discrimination against people with disabilities by refusing to provide adequate auxiliary aids to hearing-impaired persons, and an order requiring a) defendants to conduct individualized assessments of disabled prisoners' disabilities and the auxiliary aids or accommodations that would ensure effective communication and equal enjoyment of ODOC services, and b) giving primary consideration to disabled prisoners' preferred auxiliary aids.

44. Defendant should also be required to establish uniform policy and procedures establishing protocols and procedures for promptly supplying auxiliary aids and other necessary accommodations as requested by disabled AICs.

45. Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of access to programming, loss of education opportunities, and other non-pecuniary losses in an amount to be proven at trial, here

alleged to be $1,500,000. Plaintiff should also be entitled to award of his economic loss in an amount to be proved at trial, here alleged to be $10,000.

46. To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

47. Plaintiff is entitled to an award of punitive damages in an amount to be fixed by a jury at the time of trial, here alleged to be $5,000,000.

48. Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and all costs incurred.

49. Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## COUNT II
### (Section 504 of the Rehabilitation Act of 1973)
### (Against Defendants ODOC and State of Oregon)

50. Plaintiff re-alleges all prior paragraphs.

51. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, prohibits discrimination against people with disabilities by recipients of federal funding, and provides "no otherwise qualified handicapped individual . . . shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

52. Plaintiff has Ménière's Disease with hearing loss, vertigo and dizziness with accompanying nausea and vomiting, tinnitus, pain, and pressure, and accordingly, is a qualified individual with a disability or handicap under the Rehabilitation Act.

53. Plaintiff has a physical impairment that substantially limits one or more major life activities including hearing and communicating; Plaintiff has a record of such impairment; and Defendants ODOC and State regarded Plaintiff as having such impairment.

54. At all times material, Defendants are recipients of federal financial assistance for their programs and activities.

55. Defendants' actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding him or denying him the benefits of their services on the basis of a disability.

56. Defendants intentionally discriminated against Plaintiff through its actions and omissions alleged above by being aware of their obligations to address Plaintiff's needs and federally protected rights, and by failing to act at a time when it was required to protect his rights.

57. Specifically, Defendants denied Plaintiff effective communication by refusing to provide him with reasonable accommodations to allow him to understand and participate in daily life, family visits, and education programming.

58. Plaintiff sustained emotional distress and damages due to Defendants' violations of the Rehabilitation Act.

59. Pursuant to Section 505 of the Rehabilitation Act, Plaintiff is entitled to compensation for his damages and an award of attorney fees and costs.

### COUNT III
**(42 U.S.C. 1983 – Eighth Amendment – Delay and Denial of Essential Medical Care)**
**(Against Defendants Roberts, Bugher, Eriksen, Ventura, Diguilio, Harris, Dorris, John and Jane Does.)**

60. Plaintiff re-alleges all prior paragraphs as though fully restated herein.

61. Plaintiff is entitled to timely and adequate medical care as part of his Constitutionally guaranteed conditions of confinement pursuant to the 8th Amendment to the United States Constitution. Failure to provide timely and adequate medical care is a violation of the 8th Amendment prohibitions against cruel and unusual punishment.

62. Plaintiff was and continues to be denied timely, adequate, and proper medical care related to Plaintiff's Menière's Disease and disability symptoms, Plaintiff's back pain for which he has not received adequate medical care, and Plaintiff's groin rash for which he has not received adequate medical care. Specifically:

   a) Defendants Roberts, Bugher, Harris, Dorris, DiGuilio, and Does directly participated in the ongoing denial of medical care by refusing Plaintiff's numerous written and verbal requests for medical care for his Ménière's Disease symptoms, back pain, and groin rash. Defendants could have provided adequate care, ordered diagnostic testing, and made referrals to community specialists consistent with the community standard of medical care but Defendants each refused and repeatedly denied Plaintiff's numerous requests for essential care;

   b) Defendants Roberts and Bugher directly participated in the ongoing denial of medical care by refusing Plaintiff's numerous requests via the grievance process, instead ignoring Plaintiff's requests and denying his grievances without ever providing the essential care Plaintiff requested; and

   c) Defendants Eriksen, Ventura, and Does directly participated in the ongoing denial of medical care by failing to perform proper duties of ADA Coordinators to ensure that disabled individuals had access to proper aids and accommodations, including adequate medical care specifically related to Plaintiff's disability

symptoms, including severe vertigo, nausea, and vomiting related to Plaintiff's Ménière's Disease.

63. The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. As a result of Defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

64. Plaintiff is entitled to damages to compensate him for these injuries.

65. Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

66. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

### COUNT IV
### (42 U.S.C. §1983 – Eighth Amendment – Failure to Adequately Train & Supervise Subordinate Staff)
### (Against Defendants Bugher, Roberts, Ventura, and Does)

67. Plaintiff re-alleges all prior paragraphs as though fully restated herein.

68. The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. Specifically:

  a) Defendants Roberts and Bugher refused to properly oversee the medical care being provided to Plaintiff despite their respective jobs which specifically task them with ensuring that individuals in custody receive proper medical care by subordinate medical staff;

  b) Defendants Roberts and Bugher refused to properly investigate Plaintiff's grievances before providing a "rubber stamp" denial of Plaintiff's allegations and requests for medical care, despite being tasked with overseeing provision of

       medical care within ODOC and investigating grievances against subordinate staff; and

    c) Defendant Ventura refused to ensure that subordinate ADA coordinators at OSP and DRCI were providing proper disability assessments, access to proper auxiliary aids, and reasonable accommodations to Plaintiff despite being assigned these job duties;

69. As a result of Defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

70. Plaintiff is entitled to damages to compensate him for these injuries.

71. Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

72. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against Defendants:

WHEREFORE, the Plaintiff seeks judgment against Defendants, jointly and severally, and requests that this Court enter an Order as follows:

**a)** Declaring that Defendants have intentionally discriminated against Plaintiff and violated Title II of the ADA and the Rehabilitation Act by:

    i. Failing to conduct an individualized assessment of disabled prisoners to determine the appropriate auxiliary aids and accommodations that would

          ensure effective communication and equal access to and benefit of ODOC's services;

    ii.    Failing to provide accommodations and auxiliary aids to hearing-impaired prisoners that would ensure effective communication and equal access to and benefit of ODOC's services; and

    iii.    Deliberately denying access to educational services and programming by disabled prisoners on the basis of disability.

**b)**    Injunctive and other equitable relief as the Court deems appropriate, including but not limited to, an Order requiring all Defendants to

    i.    Conduct individualized assessments of the appropriate auxiliary aids and accommodations that would ensure effective communication and equal access to and benefit of ODOC's services for disabled prisoners;

    ii.    Provide accommodations and auxiliary aids to hearing-impaired prisoners that would ensure effective communication and equal access to and benefit of ODOC's services;

    iii.    Establish polices to accommodate disabled prisoners, and require ODOC to properly train ADA coordinators; and

    iv.    Establish a policy and procedure for ensuring hearing-impaired prisoners (including but not limited to those that are hard of hearing, deaf, Deaf, blind) will have an appropriate auxiliary aids and accommodations to ensure that they have equal access to due process in disciplinary hearings in ODOC custody.

Law Office of Katharine Edwards LLC
P.O. Box 417
Hillsboro, OR 97123
Ph: (503) 908-3589

    **c)**    A sum which will fully compensate Plaintiff for his non-economic damages in a sum that is just as determined by a jury, here alleged to not exceed $1,500,000;

    **d)**    A sum which will fully compensate Plaintiff for his economic damages in a sum that is just as determined by a jury, here alleged to not exceed $1,500,000;

    **e)**    Punitive damages in an amount to be fixed by the jury at the time of trial, here alleged to be $5,000,000;

    **f)**    Plaintiff's costs and disbursements incurred herein;

    **g)**    Plaintiff's attorney fees; and

    **h)**    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED: July 17, 2023

**LAW OFFICE OF KATHARINE EDWARDS**

*s/ Katharine Edwards*
Katharine Edwards, OSB No. 173393
attorney@kedwards-law.com
Telephone: (503) 908-3589
Attorney for Plaintiff